In re Dona Jeanne PADGETT, Charles Hasten Padgett, Debtors.

Dona Jeanne PADGETT, Plaintiff,

v.

Billy LATHAM, Joe W. Johnson, Steven L. Beshear, Defendants.

and

In re Dona Jeanne PADGETT, Charles Hasten Padgett, Debtors.

Charles Hasten PADGETT, Plaintiff,

v.

Billy LATHAM, Joe W. Johnson, Steven L. Beshear, Defendants.

Bankruptcy No. 5–81–00304.
Adv. No. 5–82–0067.

United States Bankruptcy Court, W.D. Kentucky.

Oct. 28, 1983.

Charles Chaney, Paducah, Ky., Michael R. Tilley, Morgan & Pottinger, Louisville, Ky., for debtor-plaintiff Dona Jeanne Padgett.

R. Michael Yates, Hickman, Ky., for debtor-plaintiff Charles Hasten Padgett.

Eileen Walsh, Com. of Kentucky, Frankfort, Ky., Greg Holmes, Com. of Kentucky, Frankfort, Ky., for Joe W. Johnson, Com. Atty., and Steven L. Beshear, Atty. Gen.

William L. Shadoan, Wickliffe, Ky., for defendant Billy Latham.

## MEMORANDUM OPINION

G. WILLIAM BROWN, Bankruptcy Judge.

Debtors, Dona Jeanne Padgett and Charles Hasten Padgett, filed complaints with this Court requesting that the named defendants in criminal proceedings commenced respectively against the debtors in Hickman Circuit Court, Kentucky, be enjoined from further prosecution of debtors pursuant to KRS 514.040, Kentucky's "bad check" statute. Debtors allege that defendants' activities are debt collection efforts, or may result in a creditor's collection of discharged debts by order of restitution, and said efforts by the defendants violate the federal stay and discharge provisions, 11 U.S.C. § 362 and § 524, of the Bankruptcy Code.

This Court finds that the activities of the defendants undertaken against Dona Jeanne Padgett in state court for the admitted purpose of collecting a debt subsequent to her filing a petition in bankruptcy are in violation of federal bankruptcy law. Defendants are therefore enjoined from pursuing the criminal charges pending against Mrs. Padgett regarding the "bad check" debt in question. Further, this Court finds that the criminal proceeding pending against Charles Padgett commenced for the purpose of enforcing police and regulatory powers is not in conflict with bankruptcy law and policy. Mr. Padgett's petition requesting that the defendants be enjoined from further proceedings against him in the criminal action pending

in Hickman Circuit Court must therefore be denied.

## FINDINGS OF FACT

In May, June and July of 1981, the debtors, Dona Jeanne Padgett and Charles Hasten Padgett, were owners of and doing business as Padgett Seed Farms in Hickman County, Kentucky. Testimony is uncontroverted that during the months of May and June a creditor herein, Billy Latham, delivered to Padgett Seed Farms approximately 1,600 bushels of beans for the purpose of cleaning and/or sale to third parties. During this period, Mr. Latham purchased supplies from the debtors and charged these purchases on an open account. In an attempt to settle the creditor's account, debtors issued to Mr. Latham a check in the amount of $11,404.32. The check was negotiated by Mr. Latham but returned due to insufficient funds. Debtors thereafter issued a new check to Mr. Latham which was not negotiated but is currently possessed by Mr. Latham.

Mr. Latham filed a civil suit against debtors on September 11, 1981, in the Hickman Circuit Court for purposes of collecting the debt. Mr. Latham was represented in the civil action by the duly elected Hickman County Attorney acting as private counsel in the proceeding. Through counsel, Mr. Latham advised that if the balance due and represented by the issued check was not paid by debtors, criminal charges would be sought.

Mr. and Mrs. Padgett filed a joint petition in bankruptcy on October 1, 1981. Although listed as a creditor of record, Mr. Latham did not participate in the bankruptcy proceeding, and the "bad check" debt owing to Mr. Latham was discharged without objection on August 5, 1982.

Subsequent to discharge of the debt in bankruptcy, Mr. Latham pursued a criminal action against Mrs. Padgett in state court, alleging a violation of KRS 514.040, Kentucky's "bad check" statute. Mr. Latham's private attorney, also serving as the County Attorney, admitted in his motion to withdraw as counsel for creditor that the crimi-

nal action was instituted on October 23, 1981, by Mr. Latham "for purposes of collecting the debt." Thereafter, on November 2, 1981, a preliminary hearing was held in the Hickman Circuit Court in which the County Attorney participated. Mrs. Padgett was indicted on January 19, 1982, and charged with "theft by deception" in violation of KRS 514.040(1)(e). Mrs. Padgett's case was tried and resulted in a "hung jury" and mistrial. Mrs. Padgett's case was subsequently set for retrial on October 20, 1982.

On March 2, 1982, pursuant to testimony offered in the trial of Mrs. Padgett, a criminal complaint issued against Mr. Padgett. Mr. Padgett was indicted by the Hickman Circuit Court grand jury on March 16, 1982, and charged with "theft by deception" in violation of KRS 514.040(1)(e).

Both debtors in this action, Charles Padgett and Dona Padgett, allege that the Commonwealth Attorney for the First Judicial District in charge of the criminal prosecution of debtors offered to dismiss the prosecution of the debtors' felony charges if full restitution in the sum of $11,404.32 were made to Mr. Latham; further, that a sentence of one year imprisonment would be recommended upon a plea of guilty, conditioned upon full restitution in installment payments being made. In rebuttal, the Commonwealth Attorney stated he could not testify to what was said during settlement negotiations, but only that said offers were not made.

Mrs. Padgett moved this Court for a temporary restraining order inhibiting Mr. Latham, the Commonwealth Attorney for the First Judicial District, and the Attorney General from further proceeding in the state court action. Said restraining order issued from this Court on October 6, 1983. Mr. Padgett also petitioned this Court for a temporary restraining order, and said order issued on October 14, 1982.

Both debtors herein filed complaints requesting that defendants be enjoined permanently from further criminal prosecution in the Hickman Circuit Court, Kentucky. Debtors allege that said criminal actions were instituted or proceeded upon for purposes of collecting the debt, and thus defendants' prosecution of debtors violates federal bankruptcy law and should be enjoined by this Court.

## CONCLUSIONS OF LAW

The power of a federal court to enjoin proceedings before a state court is limited. The Anti-Injunction Act, 28 U.S.C. § 2283 provides:

A court of the United States may not grant an injunction to stay proceedings in a state court *except as expressly authorized* by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments. (Emphasis added.)

However, the Bankruptcy Code provides in 11 U.S.C. § 105 express authorization by Congress for bankruptcy courts to "issue any order, process or judgment that is necessary to carry out the provisions of this title." See S.Rep. No. 95–989, 15th Cong., 2d Sess., *reprinted in* U.S.Code Cong. & Admin.News 1978, pp. 5787, 5815.

■ Although the bankruptcy court may not enjoin the state court directly, the federal court may enjoin, under proper circumstances, litigants in a state court proceeding which has the effect of preventing state court prosecution. The federal court power to interfere with state criminal proceedings is nevertheless narrowly circumscribed and justified only when the evidence clearly reflects that litigants are proceeding in state court for purposes of collecting a debt. *In Re Holder,* 26 B.R. 789 (Bkrtcy.M.D.Tenn.1982); see also *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (which involved a nonstatutory exception to the Act). In such instances, the federal court can recognize the need to prevent immediate, irreparable injury to a debtor who has sought relief in the bankruptcy court but is being further subjected to collection efforts

in the state court criminal proceeding. The bankruptcy court can thus enjoin litigants prosecuting in the pending state criminal proceeding due to their "showing of bad faith, harassment, or other unusual circumstances that would call for equitable relief." *Younger, supra.* See also *Samuels v. Mackell,* 401 U.S. 66 at 69, 91 S.Ct. 764 at 766, 27 L.Ed.2d 688 (1971).

Bankruptcy Code provisions § 362(a) and § 524(a)(2) are fundamental in protecting a debtor in bankruptcy from such bad faith efforts or harassing attempts by creditors anxious to collect a debt subject to the bankruptcy court's jurisdiction. These collection efforts conflict with the intent of Congress that all creditors subject to the proceeding in bankruptcy be provided a full and fair opportunity to share in estate assets according to Code mandate. Efforts to retrieve payment from a debtor in bankruptcy also conflict with Code policy of protecting the debtor from creditors' scramble for remaining funds and furthering the intent of Congress in leaving debtor with sufficient assets to effectuate his "fresh start" subsequent to the bankruptcy proceeding.

To protect both debtor and creditors involved in the process of distributing and collecting estate funds, the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a), provides that any "judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title" is stayed. Section 362(b) contains delineated exceptions to this stay provision by providing in part:

"(b) The filing of a petition under section 301, 302, 303 of this title does not operate as a stay—

    \*    \*    \*    \*    \*    \*

(4) under subsection (a)(1) of this section of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power . . . ."

■ Congress' intent to exclude from mandate of the stay provision certain ac-

tions by a governmental unit against a debtor who has engaged in fraud is unquestioned. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 343 (1977), *reprinted in* U.S.Code Cong. & Admin.News, pp. 4787, 6299 (1978). However, debtors herein argue that the exception to the stay provision allowing a suit to be commenced pursuant to enforcement of police or regulatory powers is qualified when the purposes for which the criminal proceeding was instituted was a debt collection effort in contravention of the federal stay provision. Such collection attempt is not a valid exercise of police or regulatory power required for instituting a state criminal proceeding, but rather acts as a subterfuge of federal law enacted to stay any collection effort pending when the bankruptcy was filed.

Without question, Kentucky's "bad check" statute, KRS 514.040, allows for criminal proceedings to be instituted in the state court where a debtor has failed to pay a civil obligation. This Court is equally aware that KRS 514.040 could be used as leverage for collecting a debt, an action explicitly stayed by § 362(a) of the Bankruptcy Code.

■ The reality in Mrs. Padgett's situation is that the suit was instituted by a creditor whose legal representative in a prior civil action commenced to collect the debt was the duly elected county attorney. In a motion to withdraw from the civil proceeding against debtors herein, the county official admitted that the creditor, his client, was pursuing a criminal action in the state court for the purpose of debt collection. The county prosecutor further stated that as counsel for creditor, he had agreed not to press criminal charges if the debt were paid. Thereafter, the county attorney participated in a preliminary hearing which led to a criminal trial of Mrs. Padgett pursuant to Kentucky's "bad check" statute. The alleged misconduct of Mrs. Padgett was not therefore uncovered by an independent investigation by state authorities; neither was the criminal action instituted for purposes of protecting police and regulatory

**284**

powers. The state court proceeding commenced for the admitted purpose of collecting a debt was in direct violation of a stay of such collection efforts against Mrs. Padgett which went into effect on August 5, 1982.

Although the criminal proceeding was commenced against Mrs. Padgett in state court while the stay was in effect, Mr. Padgett's "bad check" debt had been discharged by this Court prior to commencement of the state criminal action against him. Section 362(a), which stays collection efforts pending determination of dischargeability of the debt in bankruptcy, is not in issue in consideration of Mr. Padgett's motion to enjoin.

■ At further issue in this case is whether the ongoing state court proceedings against debtors violate the Bankruptcy Code's discharge provision, 11 U.S.C. § 524(a)(2), which enjoins any collection activity pursued subsequent to discharge of the debt. Section 524(a)(2) was enacted by Congress to assure a fresh start to a discouraged debtor who sought relief from his fruitless efforts to pay pre-existing debts. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 126, *reprinted in* U.S.Code Cong. and Admin.News, 5963, 6087 (1978). See 3 *Collier on Bankruptcy* ¶ 524.01 (15th Ed.1981). The United States Supreme Court observed the significance of a bankrupt's fresh start opportunity in *Local Loan Company v. Hunt,* 292 U.S. 234, 235, 54 S.Ct. 695, 78 L.Ed. 1230 (1934):

"One of the primary purposes of the Bankruptcy Act is to 'relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh from the obligations and responsibilities consequent upon business misfortunes.' This purpose of the Act has been again and again emphasized by the court as being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discour-

agement of pre-existing debt." (Citations omitted.)

Section 524(a)(2) of the Bankruptcy Code encourages debtor's fresh start by providing:

"(a) A discharge in a case under this title—

\* \* \* \* \* \*

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . . "

Section 524(a)(2) insures that no debtor is pressured to repay the debt since it has been discharged in bankruptcy. As the legislative history of this discharge provision indicates, "In effect, the discharge extinguishes the debt, and creditors may not attempt to avoid that." H.R.Rep. No. 95–598, 95th Cong., 1st Sess. 366, *reprinted in* U.S.Code Cong. and Admin.News, 5787, 5866 (1978).

In this instance, the creditor allowed the bad check debt to be discharged without objection against both Mr. and Mrs. Padgett. Had creditor properly sought a determination of nondischargeability of the bad check claim, the claim would have been granted appropriate priority pursuant to 11 U.S.C. § 507 for distribution purposes. However, by commencing a debt collection action in state court in lieu of contesting dischargeability of the debt, the creditor could enjoy superior status from pursuing the debt in state court rather than in accordance with federal bankruptcy law. As noted in *In Re Taylor,* 16 B.R. 323 (Bkrtcy. Md.1981), no policy objection of either commercial or bankruptcy law justifies the conclusion that a holder of a check should enjoy a status superior to other unsecured creditors.

Because the criminal proceeding in state court against Mrs. Padgett continued subsequent to discharge in bankruptcy of her personal liability of the bad check debt and was pursued as a collection attempt, as

above denoted, the defendants here stand in violation of the § 524(a)(2) injunction ordered by this Court on August 5, 1982.

■ With regard to the state criminal proceeding commenced against Mr. Padgett subsequent to the August 3, 1982 discharge of his "bad check" liability, this Court notes that the state court action was not undertaken as a further attempt to collect his "debt." The criminal proceeding against Mr. Padgett resulted directly from information presented as testimony in Mrs. Padgett's criminal trial. The criminal prosecution did not originate from any action on behalf of defendants herein to collect a debt, but rather resulted from a duty of state officials, upon hearing said testimony, to commence the criminal proceeding to enforce police and regulatory powers. Such action on behalf of defendants does not conflict with the federal stay provision or discharge injunction which prevents only collection efforts. The criminal proceeding initiated against Mr. Padgett for a valid purpose, and any sanction which may flow therefrom does not violate § 524(a)(2) and cannot be restrained by this Court.

In accordance herewith, this Court finds that irreparable injury to Mrs. Padgett will result if defendants are not enjoined from pursuing the debt collection attempt in state court. Such collection efforts stand in violation of federal bankruptcy provisions, 11 U.S.C. § 362(a), § 524(a)(2), and must be enjoined. However, defendants' criminal prosecution of Mr. Padgett resulting solely from testimony given at Mrs. Padgett's trial and the state's independent investigation of the alleged criminal activities, is not violative of federal bankruptcy law. A state's good faith determination of the need to enforce police or regulatory powers does not conflict with federal law enacted to prevent collection activities. Further, any sanction deemed appropriate by the state court in such criminal proceedings does not contravene bankruptcy policy. Although some states have held that restitution is a form of collection, and as such violates bankruptcy law, the state court's order of restitution as a sanction for criminal activity is not synonymous with debt collection activities. Defendants therefore cannot be enjoined from further proceedings against Mr. Padgett in the criminal trial currently pending in Hickman Circuit Court, Hickman County, Kentucky.

This Memorandum Opinion constitutes Findings of Fact and Conclusions of Law pursuant to Rule 7052, Rules of Bankruptcy Procedure, and an appropriate order has been entered this 28th day of October, 1983.